Rachel Mariner, NV Bar No. 16728
Jason Kuller, NV Bar No. 12244
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Phone: 725.245.6056
Fax: 725.220.1802
rachel@rafiilaw.com
jason@rafiilaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHINA A. BURNETT THOMPSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PROVANTAGE CORPORATE SOLUTIONS, LLC, a foreign limited-liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) Failure to Pay Overtime in Violation of NRS 608.018<br><br>2) Failure to Pay All Wages Due and Owing in Violation of NRS 608.020-050<br><br>**COLLECTIVE ACTION COMPLAINT FOR:**<br><br>3) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207<br><br>**JURY TRIAL DEMANDED** |

Plaintiff China A. Burnett-Thornton, on behalf of herself and all others similarly situated, alleges as follows:

1. This is a class and collective action for unpaid wages and overtime, liquidated damages, attorneys' fees, costs, and interest under Nevada Revised Statutes ("NRS") Chapter 608 and the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq*. ("FLSA").

2.      All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge.

3.      Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

4.      Defendant ProVantage Corporate Solutions LLC ("ProVantage", "Company", or "Defendant") is a foreign limited-liability company registered to do business in Nevada. ProVantage specializes in providing "labor-intensive" services to its retail store clients such as product merchandising, fixture installation, and signage installation throughout the United States, Canada, and Mexico.

5.      At all relevant times, Plaintiff China A. Burnett-Thornton was a natural person residing in Clark County, Nevada, employed by ProVantage as a non-exempt hourly employee.

6.      "Nevada Class Members" are all current and former hourly workers hired in, based in, or residing in the State of Nevada and employed by ProVantage at any time within four years before the filing date of this Complaint until the date of judgment (the "Nevada Class Period").

7.      "FLSA Class Members" are all current and former hourly workers employed by Provantage in the United States within three years before the filing date of this Complaint until the date of judgment (the "FLSA Class Period").

8.      Nevada Class Members and FLSA Class Members are collectively referred to herein as "Class Members."

9.      The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and this Complaint will be amended at such a time when Plaintiff learns of their identities. Plaintiff is informed and believes that each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein.

10.     Any reference in this Complaint to "Defendant," "Defendants," "Doe Defendants," "Company," or "ProVantage," shall mean "Defendants and each of them."

## JURISDICTION AND VENUE

11.     Because Plaintiff's FLSA claim arises under federal law, the Court has federal



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

question jurisdiction pursuant to 28 U.S.C §1331.

12. The Court has jurisdiction over Plaintiff's collective action overtime claim under the FLSA, 29 U.S.C. § 216(b), which states: "An action to recover the liability prescribed … may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

13. Because Plaintiff's FLSA claim arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C §1331.

14. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a) in that there is complete diversity between Plaintiff and Defendant, and more than $75,000 in controversy exclusive of interest and costs.

15. In addition, the Court has supplemental jurisdiction over Plaintiff's Nevada state-law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact regarding Defendant's unlawful treatment of Plaintiff and Class Members, and form part of the same case and controversy.

16. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. *See* 28 U.S.C. § 1391(b)(2).

**FACTUAL ALLEGATIONS**

17. Plaintiff incorporates and realleges all paragraphs above.

18. Ms. Burnett-Thornton began working for ProVantage on or around September 16, 2020.

19. At all relevant times, ProVantage employed Plaintiff and Class Members as daily laborers (collectively "Laborers") on projects including new store setups, remodels, millwork, carpentry, and merchandising services throughout the United States, Canada, and Mexico. These "labor-intensive" projects typically required between five and fifty Laborers and could last anywhere from a few days to a few months.

20. At all relevant times, many if not most Laborers – including Plaintiff –were required to travel from their home city to remote cities throughout the United States to work on ProVantage

3
**CLASS & COLLECTIVE ACTION COMPLAINT**

projects (collectively "Remote Projects").

21. For example, although Plaintiff was based in southern Nevada, she was assigned to work on Remote Projects in California, Arizona, New Mexico, North Carolina, South Carolina, West Virginia, Kentucky, Indiana, Florida, Georgia, and Pennsylvania.

22. At all relevant times, Plaintiff was required to drive her personal vehicle from her home city to Remote Projects in other states.

23. At all relevant times, Plaintiff was also required to transport other Laborers in her personal vehicle to Remote Projects.

24. When she originally applied for a "Travel Retail Merchandising" position with ProVantage, the Company informed her that her pay rate would be "$15.50-16/Hour" and that she would "Get paid to travel" as follows:

> **When assigned more than 50 miles from your home, receive per diem to assist with hotels and meals, in addition to mileage when using your personal vehicle & travel time pay!**

25. Ms. Burnett-Thornton's employment was terminated in March, 2023.

26. Ms. Burnett-Thornton and her fellow Field Representatives and later Assistant Leads regularly worked overtime and regularly drove to projects for ProVantage.

27. Ms. Burnett-Thornton and her fellow employees were paid bonuses for some projects ("Bonuses").

28. Ms. Burnett and her fellow employees were reimbursed for time spent driving to projects ("Drive Time" or "DT") and for driving to or back from projects at night ("Late Drive") at various rates.

29. In calculating the regular rate of pay for purposes of determining overtime, however, ProVantage did not include Bonuses, Drive Time or Late Drive for any hourly employee.

30. Contrary to ProVantage's overtime system, Nevada law and the FLSA require overtime to be based on the "regular rate of pay" rather than the hourly rate of pay in effect when the overtime hour is worked.

///

4
**CLASS & COLLECTIVE ACTION COMPLAINT**

*Pay Period 1/21/23*

31. More specifically, during the pay period ending January 21, 2023, Ms. Burnett-Thornton logged 34 hours of regular pay at $17.00; 4.5 hours of overtime and received $49.88 for Drive Time.

32. In that pay period, she was paid $17 + $8.15 for her Overtime hours, or $25.15 an hour ("Overtime Rate").

33. That Overtime Rate is erroneous for two reasons. First, 1.5 x $17 would be $8.50, not $8.15. Second, the $49.88 of Drive Time increased her hourly rate by $1.29 an hour. The Regular Rate of Pay for that Pay Period should be $18.29. Time and a half of this would be $27.44.

34. Thus, in that pay period, Ms. Burnett-Thornton is owed $10.40

*Pay Period 11/04/22*

35. As more specific evidence, during the Pay Period ending November 4, 2022, Ms. Burnett-Thornton worked a total of 51 hours, 17 of which were overtime, and received a $270 Bonus.

36. In that Pay Period, her Overtime rate was calculated at a simple 1.5 x 17, or $8.50 + $17 = $25.50.

37. With the Bonus, however, her regular rate of pay should have been $22.29 and her Overtime rate is properly 1.5 x $22.29 = $33.44.

38. That week she was underpaid $11.15 an hour for seventeen hours of overtime totaling $189.55.

39. By calculating and paying overtime solely based on the hourly rate of pay in effect, ProVantage systematically underpaid overtime or otherwise incorrectly paid overtime to Ms. Burnett-Thornton and other hourly non-exempt employees.

40. Unless ProVantage calculates and pays overtime based on the correct regular rate, which is not evinced in Ms. Burnett-Thornton's records, ProVantage's underpayment of overtime extends to any employee earning additional compensation – such as Bonus, Drive Time and Late Drive - in a given pay period beyond their hourly rate.

41. Upon information and belief, ProVantage maintains an unlawful company-wide policy of failing to calculate and pay overtime based on the legally-mandated "regular rate."



42. At all relevant times, Ms. Burnett-Thornton and Class Members worked over 8 hours per workday or over 40 hours per workweek without being paid overtime based on the regular rate of pay.

43. Ms. Burnett-Thornton does not have complete wage records to set forth all violations.

44. Ms. Burnett-Thornton's counsel requested her wage records from Defendant pursuant to Nevada Revised Statute sections 608.115 and 613.075 but ProVantage did not provide them.

45. Ms. Burnett-Thornton reserves the right to amend the complaint to add further violations of Nevada Labor Law and the FLSA.

46. Finally, Plaintiff's Consent to Sue is attached as Exhibit A.

## NEVADA CLASS ALLEGATIONS

47. Plaintiff incorporates and realleges all paragraphs above.

48. Plaintiff brings this action on behalf of herself and Nevada Class Members ("the Nevada Class") as a class action under Federal Rule of Civil Procedure 23.

49. At all relevant times, Plaintiff and Nevada Class Members were each an "employee" within the meaning of Nevada law. *See* NRS 608.010.

50. At all relevant times, ProVantage was an "employer" of Plaintiff and Nevada Class Members within the meaning of Nevada law. *See* NRS 608.011.

51. At all relevant times, ProVantage implemented, maintained, and enforced an unlawful overtime policy that deprived Plaintiff and Nevada Class Members from being paid for all overtime owed based on their regular rate of pay.

52. ProVantage had a duty, as well as the financial ability, to compensate Plaintiff and Nevada Class Members for all overtime hours worked based on the regular rate of pay, but willfully, knowingly, or intentionally failed to do so in order to save money or increase profits or both.

53. ProVantage continues to maintain an unlawful company-wide policy or practice of depriving non-exempt employees of their full overtime wages.

54. To date, neither Plaintiff nor Nevada Class Members have been paid all overtime wages or other damages owed by ProVantage.

55. Class treatment of Nevada Class Members is appropriate under Rule 23 for the following reasons:

    A. **_Numerosity_**: Nevada Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system. While the number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendant's business records. Upon information and belief, Defendant employs, or has employed, over 200 Nevada Class Members during the Class Period.

    B. **_Commonality_**: Common questions of law and fact exist and predominate as to Plaintiff and Nevada Class Members, including, but not limited to: (1) whether ProVantage's overtime policy is legal under Nevada law; (2) whether ProVantage failed to pay Plaintiff and Nevada Class Members 1.5 times the regular rate of pay for each overtime hour worked; and (3) whether Plaintiff and Nevada Class Members have been paid all wages due and owing upon separation from employment.

    C. **_Typicality:_** Plaintiff's claims are typical of the claims of Nevada Class Members because Plaintiff and Nevada Class Members were subject to the same employment policies and practices of ProVantage during the Class Period, and each of them sustained damages. Proof of a common or single state of facts will therefore establish the right of Plaintiff and Nevada Class Members to recover.

    D. **_Adequacy:_** Plaintiff will fairly and adequately represent the interests of Nevada Class Members because Plaintiff is herself a Nevada Class Member and has the same legal and factual issues as Nevada Class Members and has no interests antagonistic to Nevada Class Members. Plaintiff has retained legal counsel competent and experienced in class actions, including labor and employment litigation. Plaintiff and her counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

    E. **_Superiority:_** A class action is superior to other available means for the fair

7

**CLASS & COLLECTIVE ACTION COMPLAINT**

and efficient adjudication of this controversy. Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal rounding policy and practice. Class action treatment will permit a relatively large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendant and other state employers. Consequently, an important public interest will be served by addressing this matter as a class action.

56. Plaintiff reserves the right to modify or redefine "Nevada Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

### FLSA COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff incorporates and realleges all paragraphs above.

58. Plaintiff also brings this action as a collective action on behalf of themselves and similarly-situated FLSA Class Members ("the FLSA Class") pursuant to 29 U.S.C. § 216(b).

59. Plaintiff and FLSA Class Members are similarly situated based on the same factors of commonality, typicality, and adequacy enumerated above.[1]

60. At all relevant times, Plaintiff and FLSA Class Members were each an "employee" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e), (g).

61. At all relevant times, Defendant was an "employer" of Plaintiff and FLSA Class Members within the meaning of the FLSA. *See* 29 U.S.C. § 203(d), (g).

62. Nevada Class Members and FLSA Class Members overlap such that members of the Nevada Class may be members of the FLSA Class, and *vice versa*. Plaintiff are a member of both the Nevada Class and the FLSA Class.

63. Plaintiff reserves the right to modify or redefine "FLSA Class Members" for purposes

---

[1] Unlike a Rule 23 class action, an FLSA collective action does not require a showing of numerosity or superiority.

8

**CLASS & COLLECTIVE ACTION COMPLAINT**

of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

## FIRST CAUSE OF ACTION

### Failure to Pay Overtime

**(On Behalf of Plaintiff and Nevada Class Members)**

64. Plaintiff incorporates and realleges all paragraphs above.

65. In relevant part, NRS 608.018(1) requires an employer to "pay 1 1/2 times an employee's regular wage rate whenever an employee…works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday…" and that employee is paid less than 1 1/2 times the minimum wages rate in effect.

66. The term "Workday," as defined by NRS 608.0126, "means a period of 24 consecutive hours which begins when the employee begins work."

67. For employees making 1½ times the minimum wage rate (or above), NRS 608.018(2) requires an employer to "pay 1 ½ times an employee's regular wage rate whenever an employee…works more than 40 hours in any scheduled workweek."

68. Here, at all relevant times, ProVantage failed to pay 1½ times the applicable "regular wage rate" for for all hours worked by Plaintiff and Nevada Class Members over 8 in a workday or over 40 per workweek as required by NRS 608.018.

69. ProVantage's failure to pay overtime to Plaintiff and Nevada Class Members was and is a willful violation of Nevada law. ProVantage knew or should have known that its overtime policies and practices were unlawful.

70. Wherefore, Plaintiff and Nevada Class Members demand payment by ProVantage at one and one-half times their "regular wage rate" for all hours worked 8 in a workday or 40 hours in a workweek, together with attorney's fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Timely Pay All Wages Due

**(On Behalf of Plaintiff and Nevada Class Members)**


RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

71. Plaintiff incorporates and realleges all paragraphs above.

72. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

73. NRS 608.030 similarly provides that an employee who resigns or quits must be paid within seven days or on the next regular payroll date, whichever earlier occurs.

74. NRS 608.040(1) states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or…[o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30 days, whichever is less."

75. NRS 608.050 grants a "lien" to every employee separated from employment for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

76. Here, by failing to compensate Plaintiff and Nevada Class Members separated from employment for all overtime hours worked based on the applicable regular rate of pay, ProVantage has failed to timely remit all wages due and owing to Plaintiff and Nevada Class Members separated from employment.

77. Wherefore, Plaintiff and Nevada Class Members demand up to thirty (30) days wages according to proof pursuant to NRS 608.040 and NRS 608.050, together with attorney's fees, costs, and interest as provided by law.

## THIRD CAUSE OF ACTION

### Failure to Pay Federal Overtime

**(On Behalf of Plaintiff and FLSA Class Members)**

78. Plaintiff incorporates and realleges all paragraphs above.

79. The FLSA provides that "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek

10
**CLASS & COLLECTIVE ACTION COMPLAINT**

longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times *the regular rate* at which he is employed." 29 U.S.C § 207(a)(1) (emphasis added).

80. Here, at all relevant times, ProVantage failed to pay one and one-half times the applicable regular rate of pay for all hours worked over 40 by Plaintiff and FLSA Class Members in any given workweek.

81. ProVantage' failure to pay overtime to Plaintiff and FLSA Class Members was and is a willful violation of the FLSA. ProVantage knew or should have known that overtime was calculated and paid based on the applicable regular rate of pay.

82. Wherefore, Plaintiff and FLSA Class Members demand payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA Class Period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of Class Members and all others similarly situated, prays for relief as follows:

1. For damages, according to proof, of overtime compensation at one and one-half times the regular rate of pay for all hours worked over 8 in a workday or over 40 in a week pursuant to NRS 608.018 or 29 USC § 207;

2. For up to 30 days of wages, according to proof, pursuant to NRS 608.040 and NRS 608.050 for Plaintiff and Nevada Class Members separated from employment;

3. For liquidated (double) damages pursuant to 29 U.S.C. § 216(b) on behalf of Plaintiff and FLSA Class Members;

4. For an order certifying this action as a class action under Federal Rule of Civil Procedure 23 on behalf of Nevada Class Members;

5. For an order conditionally certifying this action as a collective action under the FLSA on behalf of FLSA Class Members;

6. For an order appointing Plaintiff as class representative and her counsel as class counsel

11
**CLASS & COLLECTIVE ACTION COMPLAINT**

for Nevada Class Members and FLSA Class Members;

7. For reasonable attorneys' fees authorized by statute, common law, or equity;

8. For costs of suit incurred herein;

9. For pre-judgment and post-judgment interest at the maximum legal rate;

10. For exemption from the Nevada Arbitration Rules pursuant to N.A.R 3 and 5; and

11. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury of the above-captioned matter pursuant to Rule 38, F.R.C.P.

Respectfully submitted,

DATED: March 27, 2025           **RAFII & ASSOCIATES, P.C.**

By:  */s/ Rachel Mariner*
     RACHEL MARINER
     *Attorney for Plaintiff*

# EXHIBIT A

# EXHIBIT A

# CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

Print Name: <u>China Burnett-Thornton</u>

1. I hereby consent to be a party plaintiff in a collective action lawsuit against **PROVANTAGE CORPORATE SOLUTIONS, LLC,** and/or any other named defendants ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. I understand this lawsuit seeks to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other relief available pursuant to the FLSA.

3. I designate the law firm of RAFII & ASSOCIATES, P.C., and any other attorneys with whom they may associate, as my attorneys in this lawsuit to prosecute my FLSA and related claims.

4. I understand I have the right to pursue my claims individually on my own behalf. I agree to serve as the Class Representative if the Court so approves. If someone else serves as Class Representative, then I designate such Class Representative(s) as my agents to make decisions on my behalf concerning the litigation and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at RAFII & ASSOCIATES, P.C., to use this consent to file my claims in a separate lawsuit, class/collective action, or arbitration against Defendants.

Signature: *china burnett-thornton*    Date: 3/21/2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date shown file stamped above, I served a true and correct copy of the foregoing pleading on all registered parties with the Court's electronic filing system.

      /s/ Jason Kuller
Jason Kuller
Of Counsel
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com